UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GARY D. FIELDS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:14-cv-01928-TWP-MJD |
| ) | |
| CAROLYN COLVIN, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Gary Fields ("Fields") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Social Security Disability Insurance Benefits ("DIB") under Title II and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3). For the reasons set forth below, the Magistrate Judge recommends that the District Judge **REVERSE** the decision of the Commissioner and **DIRECT** that DIB and SSI be awarded to Fields.

**I. Background**

Fields filed his application for DIB and SSI on December 12, 2008, alleging January 1, 2008 as the onset date of his disability. [R. at 58.] In his disability report filed in conjunction with his application, Fields listed organic mental disorders, heart problems, anxiety, depression, and psychotic symptoms as his disabling impairments.[1] [R. at 210.] Fields's application was

---

[1] Fields recited the relevant factual and medical background in his opening brief. [*See* Dkt. 17.] The Commissioner, unless otherwise noted herein, does not dispute these facts. [*See* Dkt. 18.] Because these facts involve Fields's

1

denied initially on May 6, 2009 and upon reconsideration on October 5, 2009. [R. at 79, 90.] Fields timely requested a hearing on his application, which was held before Administrative Law Judge David R. Wurm on September 13, 2010. [R. at 16.] The ALJ issued his decision on October 27, 2010, denying Fields's application for DIB and SSI, [R. at 54,] and on April 11, 2012 the Appeals Council denied Fields's request for review. [R. at 1.]

Fields filed a complaint with the United States District Court for the Southern District of Indiana on June 6, 2012. [R. at 982.] The Court issued an order on July 26, 2013 reversing the Commissioner's decision and remanding the case for further proceedings. [R. at 979.] The Court found the ALJ erred by 1) improperly analyzing whether the opinion of Fields's treating physician Martin F. Abbert, MD, was entitled to controlling weight, 2) disregarding the evidence in the record of Fields's psychological impairments without explanation, 3) improperly analyzing Fields's credibility, and 4) failing to adequately consider whether Fields's mental impairments satisfied Listing 12.05. [R. at 981-994.]

On remand, a hearing was held before a new Administrative Law Judge, William E. Sampson ("ALJ"), on April 25, 2014. [R. at 894.] On July 24, 2014, the ALJ issued his decision again denying Fields's application for DIB and SSI. [R. at 862.] Fields timely filed his Complaint with this Court on November 21, 2014, which Complaint is now before the Court.

## II.  Legal Standard

To be eligible for DIB or SSI, a claimant must have a disability pursuant to 42 U.S.C. § 423.[2] Disability is defined as the "inability to engage in any substantial gainful activity by reason

---

confidential and otherwise sensitive medical information, the Court will incorporate by reference the factual background in the parties' briefs and articulate specific facts as needed below.

[2] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI.  However, separate, parallel statutes and regulations exist for Disability Insurance Benefits and Supplemental Security Income claims.  Therefore, citations in this opinion should be considered to

of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful activity ("SGA"), he is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits his ability to perform basic work activities, he is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three and he is able to perform his past relevant work, he is not disabled; and (5) if the claimant is not found to be disabled at step three and either cannot perform his past relevant work or has no past relevant work but he can perform certain other available work, he is not disabled. 20 C.F.R. § 404.1520. Before proceeding from step three to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"), identifying the claimant's functional limitations and assessing the claimant's remaining capacity for work-related activities. S.S.R. 96-8p.

The ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This Court may not reweigh the evidence or substitute its judgment for that of the ALJ but may only determine whether substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.3d 456, 462 (7th

---

refer to the appropriate parallel provisions as context dictates. The same applies to citations of statutes and regulations found within cited court decisions.

Cir. 2008) (citing *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (citing *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985); *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984)). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). To be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into his reasoning" and "build an accurate and logical bridge from the evidence to his conclusion." *Dixon*, 270 F.3d at 1176.

### III. The ALJ's Decision

In his decision, the ALJ first determined Fields met the insured status requirements of the Act through September 30, 2015 and did not engage in substantial gainful activity from January 1, 2008, the alleged onset date, through October 27, 2010. [R. at 868.] At step two, the ALJ found Fields's coronary artery disease, osteoarthritis to his right shoulder, degenerative disc disease, obesity, asthma, chronic obstructive pulmonary disease, mild mental retardation, depression, and generalized anxiety disease to be severe impairments, as defined by the Act, because they had a more than minimal effect on Fields's ability to do basic work activities. [*Id.*] However, at step three the ALJ found Fields did not have an impairment that meets or medically equals a Listing by evaluating Listings 1.02, 1.04, 3.02, 3.03, 3.10, 4.01, 4.02, 4.04, 12.02, 12.04 and 12.05. [R. at 868-71.]

At step three but before step four, the ALJ, after "careful consideration of the entire record," determined Fields had the RFC to perform "light work" with the following additional limitations:

> [T]he claimant is able to lift up to 20 pounds occasionally and up to 10 pounds frequently, stand and/or walk up to 4 hours in an 8-hour workday and sit up to 6 hours in an 8-hour workday. He would need a sit/stand option whereby he could sit for 15 minutes of every hour. In addition, he is never to climb ladders, ropes or scaffolds, but is occasionally able to climb ramps and stairs, and balance, stoop, kneel, crouch and crawl. He is limited to occasional overhead reaching with his right dominant upper extremity. He is to avoid concentrated exposure to breathing irritants such as fumes, odors, dusts and gases and hazards, such as dangerous moving machinery and unprotected heights. Mentally, he is limited to simple, routine and repetitive tasks and occasional interaction with his co-workers and supervisors and no interaction with the public. Lastly, he is not to have any production rate pace work, such as on an assembly line.

[R. at 871.] Having made this RFC assessment, the ALJ found at step four that Fields was unable to perform his past relevant work. [R. at 883.] However, considering Fields's age, education, work experience, and RFC, the ALJ found at step five there were jobs that existed in significant numbers that Fields could perform. [R. at 883-84.] Specifically, the ALJ found Fields was able to perform work as a microfilm document processor, an ampule sealer, and a pari-mutuel ticket checker. [R. at 884.] Based on these findings, the ALJ concluded Fields was not disabled, as defined by the Social Security Act, between January 1, 2008 and October 27, 2010. [*Id.*]

## IV.  Discussion

On appeal, Fields argues substantial evidence did not support the mental health limitations the ALJ included in his RFC assessment. Furthermore, he argues substantial evidence did not support the ALJ's conclusion that Fields's mental impairments did not meet or medically equal Listing 12.05. Finally, he argues the ALJ erred by not incorporating a reading limitation into his RFC assessment.

### A.  Mental RFC Assessment

First, Fields argues the ALJ improperly reflected his mental limitations in his RFC assessment. Specifically, he argues the ALJ did not provide substantial evidence to support his

decision to give little weight to the opinion of Fields's treating physician, Martin F. Abbert, MD ("Dr. Abbert"). Dr. Abbert opined Fields suffered numerous symptoms from his impairments, including generalized, persistent anxiety; deeply ingrained, maladaptive patterns of behavior; difficulty thinking or concentrating; persistent disturbances of mood or affect; and sleep disturbance. [R. at 857-58.] Dr. Abbert further opined Fields was unable to meet competitive standards in a variety of work-related activities, including: understanding and remembering very short and simple instructions; working in coordination with or proximity to others without being unduly distracted; making simple work-related decisions; completing a normal workday and workweek without interruptions from psychologically based symptoms; getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; understanding and remembering detailed instructions; carrying out detailed instructions; interacting appropriately with the general public; and maintaining socially appropriate behavior. [R. at 859-60.]

The ALJ gave "little weight" to Dr. Abbert's opinion. [R. at 32.] When analyzing the proper weight to give to the opinion of a treating physician, the ALJ must determine whether the opinion is entitled to controlling weight. The ALJ must give a treating physician's opinion controlling weight if it is both "(1) supported by medical findings; and (2) consistent with substantial evidence in the record." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (citing 20 C.F.R. § 404.1527(c)(2)). "An ALJ who does not give controlling weight to the opinion of the claimant's treating physician must offer 'good reasons' for declining to do so." *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)(2)).

The ALJ admitted Dr. Abbert had a long-standing treating relationship with Fields and his findings had been relatively consistent over time. [R. at 879.] Nevertheless, the ALJ

concluded his opinion was entitled to little weight because his opinion was inconsistent with Fields's previous employment history, relied heavily on Fields's own statements to him, and was inconsistent with Dr. Abbert's treatment of Fields. [*Id*.] Fields argues the ALJ improperly relied upon his prior work history when analyzing Dr. Abbert's opinion, while ignoring Fields's worsening condition and difficulty maintaining employment after the alleged onset date of January 1, 2008. The Court agrees.

The ALJ's analysis of Fields's employment history contains serious flaws and omissions. For example, the ALJ stated Fields received certification to work as a welder by going to school, when in fact he became certified through his company. [*Compare* R. at 871, *with* R. at 908.] Furthermore, the ALJ wrote Fields had obtained a commercial driver's license to become a truck driver, but there was no evidence to support that in the record. [R. at 871.] The Commissioner concedes the ALJ erred when making these statements. [Dkt. 18 at 3.]

Furthermore, the ALJ improperly relied upon Fields's prior SGA when analyzing Dr. Abbert's opinion. The ALJ noted Fields engaged in SGA every year between 2000 and 2007. [R. at 871, 879.] However, Dr. Abbert's opinion was written on September 10, 2010, three years **after** Fields had last engaged in SGA. [*Compare* R. at 861, *with* R. at 1052.] While not explicitly stated in the opinion, it is reasonable to assume Dr. Abbert was referring to Fields's limitations in 2010, not his limitations between 2000 and 2007. [R. at 858 ("please give us your opinion based on your examination of how your patient's mental/emotional capabilities **are** affected by the impairment(s)") (emphasis added).] Furthermore, the ALJ failed to consider that Dr. Abbert's March 25, 2009 treatment note indicated Fields's condition had worsened since the beginning of 2008, the alleged onset date for Fields's disability. [R. at 628 ("Voices have been worse since his

7

grandparents passed away a year ago about six weeks apart.").] Thus, Fields's SGA between 2000 and 2007 does not contradict Dr. Abbert's 2010 opinion regarding Fields's limitations.

The ALJ also erred when he used Fields's employment during the period of his disability to discredit Dr. Abbert's opinion. The ALJ noted Fields was able to work each year during his alleged disability. [R. at 879.] However, the ALJ did not mention that in 2008 Fields was fired from three different jobs after less than three weeks of employment.[3] [R. at 229, 248, 253.] An ALJ may not use a claimant's failed attempts to obtain employment against him, as it would "discourage other potential claimants from attempting to work, or testing their ability to work." *Simpson v. Colvin*, No. 1:12-CV-00962-MJD, 2013 WL 3940626, at *5 (S.D. Ind. July 31, 2013).

Furthermore, the ALJ noted Fields almost engaged in SGA in 2009. However, the ALJ failed to recognize that in 2009 Fields was employed by a "good friend" who limited his work load. [R. at 909-10.] Despite Fields's limited work load, he could not work as quickly as the job required. [R. at 909.] Furthermore, Fields got into fights with his coworkers. [R. 919-20.] Thus, Fields's limited employment for his friend also does not undermine Dr. Abbert's opinion.[4] *See Garcia v. Colvin*, 741 F.3d 758, 760 (7th Cir. 2013) ("One can be employed full time without being capable of substantial gainful activity, paradox though that may seem . . . The reasons given in the cases we've just cited are a desperate employee or a lenient or altruistic employer.")

---

[3] The ALJ correctly noted that Fields was fired from two of these positions for reasons unrelated to his job performance. [R. at 250, 255.] However, the fact that he was not fired for performance reasons does not mean he was capable of working, it only means he got fired for another reason first. Thus, these employment failures do not show Fields was capable of work during his period of alleged disability.

[4] The ALJ also noted during his analysis of Fields's physical impairments that in both October 2009 and May 2010 Fields was given a doctor's note excusing him from work, which indicated Fields was working around those times. [R. at 875.] However, these observations do not support the ALJ's position. In October 2009, Fields was working for his friend at Lowes. [R. at 298.] Furthermore, Fields reported only $1,032 in earnings in 2010, so even if Fields was employed in May 2010, the employment did not last long enough to support his ability to perform SGA at that time. [R. at 1052.]

8

Next, the ALJ discounted Dr. Abbert's opinion because it "appeared" Dr. Abbert relied on Fields's statements to him, which were "inconsistent with the claimant's own statements and the evidence before the administration." [R. at 879.] As an example, the ALJ stated Fields gave Dr. Abbert and the administration different reasons why his former boss from Lowes would not re-hire him.[5] [*Id.*] The ALJ noted Fields told Dr. Abbert his former boss would not re-hire him because he had to repeatedly tell Fields what to do and Fields would go off on him, while testifying at the hearing his former boss would not re-hire him because of medical insurance reasons. [*Id.*] However, the ALJ's analysis is seriously flawed.

Fields did not testify his boss from Lowes would not **re-hire** him because of medical insurance reasons, but that his former boss from Lowes **fired** him because of medical insurance reasons. [R. at 909-10.] In fact, when asked whether he had tried to get his job at Lowes back, Fields testified he had not because his former boss "got in trouble with the IRS." [R. at 910.] Thus, Fields explicitly testified, contrary to the ALJ's assertions, that he never tried to get re-hired at Lowes.

Additionally, it is not clear Fields was referring to his position at Lowes when he discussed trying to get his job back with Dr. Abbert. Dr. Abbert's June 8, 2010 treatment note indicates Fields spoke to his "former boss" about getting his job back, and the boss would not re-hire him because he had to repeatedly tell Fields what to do and Fields would verbally "go off on him." [R. at 854.] However, it is unclear from Dr. Abbert's note whether Fields was referring to

---

[5] The ALJ did not explicitly state he was referring to Fields's statements regarding his former boss at Lowes. [R. at 879 ("the claimant told Dr. Abbert that his boss did not want him back . . .").] Nor did the ALJ cite to the record to support his conclusion that Fields contradicted himself. [*Id.*] However, the ALJ did mention Fields stated he was not re-hired because of medical insurance reasons, and Fields testified his boss at Lowes fired him because of medical insurance reasons. [R. at 879, 909-910.] Thus, it appears the ALJ was referring to Fields's position at Lowes when discussing Fields's alleged inconsistent statements. Nevertheless, as discussed below, even assuming the ALJ was referring to Fields's position at Lowes, the evidence does not support the ALJ's assertion that Fields gave inconsistent statements to Dr. Abbert and the administration.

his boss at Lowes or one of his other former bosses. [*Id.*] In fact, Fields testified at the hearing he never got into a fight with his boss at Lowes because they were friends and his boss "always stood up for" him. [R. at 919-20.] Rather, Fields's description of the reasons his former boss would not re-hire him were similar to his testimony at the hearing as to why he had been fired from his dishwashing job in Crawfordsville. [*Compare* R. at 854, *with* R. at 911-12.] In sum, the ALJ's assertion that Fields gave inconsistent statements to Dr. Abbert and the administration is not supported by the evidence. In the absence of any other specific examples, the ALJ's general assertion that Fields's statements to Dr. Abbert were inconsistent with his statements to the administration does not provide a "good reason" for denying controlling weight to Dr. Abbert's opinion.

Finally, the ALJ argued Dr. Abbert's treatment of Fields contradicted his opinion. [R. at 879.] Specifically, the ALJ argued if Fields was actually as limited as Dr. Abbert opined, Dr. Abbert should have considered hospitalization or aggressive counseling. [*Id.*] However, the Seventh Circuit has recognized that "institutionalization of the mentally ill is generally reserved for persons who are suicidal, otherwise violent, demented, or (for whatever reason) incapable of taking even elementary care of themselves." *Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015). Dr. Abbert's opinion does not suggest Fields's mental limitations were that severe. [R. at 857-61.] Furthermore, this is a much more restrictive standard than that required to be disabled. *See* 42 U.S.C. § 423(d)(1)(A) (disability is an "inability to engage in any substantial gainful activity."). Thus, Dr. Abbert's failure to hospitalize Fields does not contradict Dr. Abbert's opinion. *Voigt*, 781 F.3d at 876.

The ALJ also misinterprets the content of Dr. Abbert's opinion when criticizing his treatment of Fields. Dr. Abbert opined as to Fields's ability to perform "*work related activities*

10

*on a day-to-day basis in a regular work setting.*" [R. at 858 (emphasis in original); *see also id.* ("Unable to meet competitive standards means your patient cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained based **in a regular work setting**") (emphasis added).] Dr. Abbert was **not** opining as to limitations in other aspects of Fields's life.[6] Furthermore, the ALJ provides no medical support for his conclusion the limitations opined by Dr. Abbert required more "aggressive" treatment than the treatment Dr. Abbert provided. *See Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009). In sum, the ALJ's suggestion that Dr. Abbert's treatment of Fields undermines his opinion is unsupported by the evidence.

Thus, the Court finds the ALJ did not have a "good reason" for declining to give controlling weight to Dr. Abbert's opinion. For many of the same reasons, the Court also finds the ALJ erred in his analysis of Fields's credibility.[7] [Dkt. 17 at 30-32.] An ALJ's credibility determination is intertwined with his assessment of the claimant's treating physician. S.S.R. 96-7p (an ALJ must consider "any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual" when determining the credibility of a claimant's alleged symptoms); *see also Gilbert v. Astrue*, 231 F. App'x 778, 784-85 (10th Cir. 2007); *Brown v. Comm'r of Soc. Sec. Admin.*, No. CA 1:14-3472-SVH, 2015 WL 4095643, at *17 (D.S.C. July 6, 2015). Thus, an improper assessment of a treating physician's opinion necessarily alters the ALJ's determination

---

[6] For this reason, the ALJ's reliance on Dr. Abbert's statement that Fields "is in pretty good cognitive functioning" in one of his treatment notes is misplaced. [R. at 879 (citing R. at 686).] This general statement from a single treatment note does not contradict Dr. Abbert's specific opinion regarding Fields's ability to function in a regular work setting.
[7] Fields did not address the ALJ's credibility determination with regard to his alleged physical impairments in his brief, and therefore the Court will limit its analysis to the ALJ's credibility determination regarding Fields's alleged mental limitations. [*See* Dkt. 17 at 30 ("The ALJ's decision to reject Plaintiff's allegations of disabling mental limitations due to his intellectual disability and psychiatric impairments was 'patently wrong.'").]

as to credibility. Therefore, the ALJ's errors analyzing Dr. Abbert's opinion undermines his analysis of Fields's credibility.

Furthermore, the additional evidence the ALJ cited does not provide substantial evidence for his credibility determination. The ALJ noted Fields has "**some** history of noncompliance with his prescribed treatment, including failing to show up for multiple mental health appointments [and] failing to take his mental health medications."[8] [R. at 882 (emphasis added).] However, the ALJ failed to consider that "[f]or some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283 (6th Cir. 2009); *see also Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006) (mental illness in general . . . may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment.") (internal citations omitted).

The ALJ also found Fields's mental limitations were "likely" due "in large part to situational factors rather than to an inherent mental illness." [R. at 881.] The ALJ argued this supported his credibility determination of Fields. [R. at 880-82.] However, the Court fails to see the relevance of this observation. The Social Security Regulations do not require an "inherent mental illness" in order to receive benefits. *See* 42 U.S.C. § 423(d). Furthermore, a claimant with pre-existing mental impairments can have their limitations "so severely exacerbated by an external stressor that he or she becomes unable to work." *Lewis v. Paul Revere Life Ins. Co.*, 80 F. Supp. 2d 978, 988 (E.D. Wis. 2000). Thus, this fact does not support the ALJ's credibility determination.

---

[8] The ALJ also noted Fields continued smoking throughout the period of his alleged disability. [R. at 882.] However, the Seventh Circuit has held that the failure to quit smoking "is an unreliable basis on which to rest a credibility determination." *Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000). This is especially true in this case, since there is no medical evidence in the record that smoking contributed to Fields's mental limitations. *Id.*

Finally, the ALJ cited to Fields's activities of daily life to support his credibility determination. [R. at 881.] The ALJ argued Fields's ability to perform various activities of daily life weighs against the credibility of Fields's allegations. [*Id*.] While this is a proper consideration when making a credibility determination, *see* S.S.R. 96-7p, the Seventh Circuit has "repeatedly warned against equating the activities of daily living with those of a full-time job." *Hill v. Colvin*, No. 15-1230, 2015 WL 7785561 at *6 (7th Cir. Dec. 3, 2015). Thus, considering the other errors in the ALJ's analysis, the Court finds Fields's activities of daily life, standing alone, do not provide substantial evidence for the ALJ's determination.

In sum, the ALJ did not provide a "good reason" for declining to give controlling weight to the opinion of Fields's treating physician. Relatedly, the ALJ did not provide substantial evidence for discrediting Fields's subjective allegations of his mental limitations. Thus, the Court finds the ALJ erred in his analysis of Fields's mental limitations.

### B. Listing 12.05 (Intellectual Disability)

Next, Fields argues the ALJ's denial decision was in error because substantial evidence did not support the ALJ's finding that he did not meet or medically equal Listing 12.05(c). (Intellectual Disability). To satisfy Listing 12.05(c), a claimant must show "(1) significantly subaverage general intellectual functioning; (2) deficits in adaptive functioning initially manifested during the developmental period before age 22; (3) a valid verbal, performance, or full scale IQ of sixty through seventy; and (4) a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Marsh v. Colvin*, No. 1:13-CV-00707-JMS, 2014 WL 1511675, at *3 (S.D. Ind. Apr. 16, 2014) (citing *Adkins v. Astrue*, 226 F. App'x 600, 605 (7th Cir. 2007)); 20 C.F.R. Pt. 404, Subpt. P., App. 1.

The Court finds the ALJ erred in his analysis of whether Fields's impairments met or medically equaled Listing 12.05(c). The ALJ first concluded Fields did not satisfy the IQ requirement because his IQ score of 67 did not occur before he was 22, a conclusion the Commissioner concedes was incorrect. [Dkt. 18 at 2 (citing *Guzman v. Bowen*, 801 F.2d 273, 275 (7th Cir. 1986).] Furthermore, in his analysis of Fields's deficits in adaptive functioning, the ALJ relied on his flawed analysis of Fields's employment history discussed above. [R. at 871.] Finally, the ALJ gave an incomplete picture of Fields's educational records. [*Id.*] The ALJ did not mention Fields was in special education classes, received only C grades or lower in high school, had significantly below standard test scores in the fifth grade, and by age 17 had reading skills equivalent to a fourth grader. [R. at 1060-64.] Thus, the ALJ failed to "build an accurate and logical bridge from the evidence to his conclusion" and his decision must be reversed. *Dixon*, 270 F.3d at 1176.

### C. Reading Limitations

Finally, Fields argues the ALJ erred by failing to account for his limited reading skills in his RFC assessment. An ALJ is required to include in his RFC assessment and hypothetical to the vocational expert ("VE") all physical and mental limitations he finds credible, including any limitations in reading ability. *Vinson v. Astrue*, No. CIV. 10-1034-CJP, 2012 WL 625713, at *7 (S.D. Ill. Feb. 24, 2012). The ALJ noted when reviewing Fields's educational records that in sixth grade Fields tested at a fourth grade reading level. [R. at 872.] However, the ALJ failed to note that at ages 15 and 17 Fields's reading comprehension and reading vocabulary scores were tested at or below a fourth grade level. [*Id.*] His highest level of education reached was the eleventh grade, so it is reasonable to presume his reading ability has not improved much since

14

age 17. [R. at 872.] Furthermore, Fields testified at the hearing he has problems reading. [R. at 904.] The ALJ considered none of this information when formulating his RFC assessment.

The Commissioner argues any error by the ALJ in failing to consider Fields's limitations in reading was harmless. However, the VE testified someone who reads at a fourth grade level would have a "language development" score of one. [R. at 944-46.] If Fields had a language development score of one, he would be unable to perform the jobs the ALJ found he could work. [R. at 884, 944-46;] *see also* DOT 249.587-018; DOT 559.687-014; DOT 219.587-010. Furthermore, the one job the VE testified Fields could perform with a language development score of one requires light exertional work. [R. at 946;] DOT #209.587-034. However, the ALJ's RFC assessment, which stated Fields is able to "stand and/or walk up to 4 hours in an 8-hour workday," would appear to preclude such work. *Compare* [R. at 871,] *with* S.S.R. 83-10 ("light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.") Thus, the ALJ's failure to consider Fields's limitations in reading was not harmless.

### D.  Remedy

Generally, when a court finds the Commissioner's disability determination is not supported by substantial evidence, the claim is remanded to the agency for reconsideration. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). That was exactly what the Court did following the first appeal of this matter. [R. at 979.] However, the Court has the authority to order an award of benefits without remanding the case for a rehearing. 42 U.S.C. § 405(g). The Court may only direct an award of benefits "if all factual issues have been resolved and the record supports a finding of disability." *Briscoe ex rel. Taylor*, 426 F.3d at 355. The Court concludes an award of benefits is the proper remedy in this case.

First, the Court finds Dr. Abbert's opinion is entitled to controlling weight. In *Wilder v. Apfel*, the Seventh Circuit awarded benefits when the agency twice disregarded medical evidence without legitimate reasons for doing so. *Briscoe ex rel. Taylor*, 426 F.3d at 355 (citing *Wilder v. Apfel,* 153 F.3d 799 (7th Cir. 1998)). In interpreting *Wilder*, the Court explained that "the ALJ cannot continue to disregard [a] medical opinion" that is unrefuted by other record evidence. *Id.* This is precisely what the agency did in this case. The Court remanded this case the first time because the ALJ failed to consider the factors supporting Dr. Abbert's opinion and offered no legitimate reasons for discrediting it. *See Fields v. Astrue*, No. 1:12-CV-00774-DKL, 2013 WL 3895261, at *5 (S.D. Ind. July 26, 2013). On remand, the ALJ once again "supported his conclusion with a selective and mistaken view of the record evidence, resulting in a second denial that was 'no more reasoned than the first one.'" *Byers v. Astrue*, No. 1:08-CV-1174-DFH-JMS, 2009 WL 3246617, at *13 (S.D. Ind. Oct. 5, 2009) (quoting *Wilder*, 153 F.3d at 802).

Furthermore, the Court's own review of the record finds no "substantial contradictory evidence" to undermine Dr. Abbert's opinion. *Id.* While the state psychological consultant opined Fields had fewer restrictions than Dr. Abbert, the consultant never examined Fields and provided no explanation for his opinion. *Id.*; *Freeman v. Astrue*, 816 F. Supp. 2d 611, 630 (E.D. Wis. 2011) ("the opinions of non-treating, non-examining doctors who provide no analysis are generally given very little weight anyway.")  This stands in stark contrast to Dr. Abbert's longitudinal opinion based upon his many years as Fields's treating physician. [R. at 878-79;] *see* 20 C.F.R. § 404.1527(c)(1-2). Moreover, the contradicting opinion of a state medical expert is insufficient, standing alone, to provide substantial evidence for disregarding the opinion of a treating physician. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) ("[a]n ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the

16

record; a contradictory opinion of a non-examining physician does not, by itself, suffice."); *Micus v. Bowen,* 979 F.2d 602, 607–09 (7th Cir. 1992) (ordering payment of benefits where the ALJ erroneously rejected a treating physician's opinion that was supported by substantial evidence, and relied instead on the "speculative statement" of a consulting physician). Thus, the Court finds Dr. Abbert's opinion is entitled to controlling weight as a matter of law.

 Once Dr. Abbert's opinion is given controlling weight, "the record supports a finding of disability." *Briscoe ex rel. Taylor*, 426 F.3d at 355. At the hearing, the VE testified a hypothetical claimant with Fields's RFC assessment could perform jobs as a microfilm document processor, an ampule sealer, and a pari-mutuel ticket checker. [R. at 871, 941.] However, when the ALJ added that the same hypothetical claimant would be off task 20 percent of the workday or would be absent from work two days per month, the VE testified there would be no jobs he could perform. [R. at 943-44.] Dr. Abbert opined Fields had difficulty concentrating and was easily distracted. [R. at 858.] Furthermore, Dr. Abbert opined Fields was "unable to meet competitive standards" in maintaining attention for two hour segments; maintaining regular attendance and being punctual within customary, usually strict tolerances; performing at a consistent pace without an unreasonable number and length of rest periods; and working in coordination with or proximity to others without being unduly distracted. [R. at 859.] These limitations are consistent with someone who would be off task at least 20 percent of the workday or be absent from work two days per month. Thus, incorporating Dr. Abbert's opinion into Fields's RFC assessment, a finding of disabled is required.

 In sum, the Court finds that all factual disputes regarding Dr. Abbert's opinion have been resolved, and his opinion is entitled to controlling weight as a matter of law. Once the limitations from Dr. Abbert's opinion are incorporated into Fields's RFC assessment, there are no job that

17

he could perform. As a result, another remand "would serve only to delay [Fields's] ultimate receipt of benefits." *Byers*, 2009 WL 3246617, at *14. Thus, the Court recommends the District Judge enter a final judgment directing the award of DIB and SSI to Fields.

## V.  Conclusion

For these reasons, the Magistrate Judge recommends that the District Judge **REVERSE** the ALJ's decision **AND** enter a final judgment **DIRECTING THE AWARD** of DIB and SSI to Plaintiff Gary Fields. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Dated:  22 DEC 2015

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Joseph R. Wambach
KELLER & KELLER
joew@2keller.com

Thomas B. Browder
KELLER & KELLER
tomb@2keller.com

Timothy E. Burns
KELLER & KELLER
timb@2keller.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov